UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SATCO INCORPORATED, and SAEED
(ALLEN) TALEBI,

      Plaintiffs,

-against-

GAS TURBINE CONTROLS CORPORATION,
and PETER ZINMAN,

      Defendants.

---

16-Cv-9715 (SHS)

OPINION

SIDNEY H. STEIN, U.S. District Judge.

This commercial dispute concerns a collision between New York contract law and U.S. sanctions prohibiting unlicensed exports to the Islamic Republic of Iran. Defendants moved to dismiss the First Amended Complaint as time-barred. For the reasons set forth below and at the oral argument of this motion, the Court grants defendants' motion and dismisses the complaint with prejudice.

I. Background

 A. Factual Background

Plaintiff Saeed "Allen" Talebi is an Iranian national and the sole shareholder of plaintiff Satco Incorporated, a Canadian corporation that is "no longer . . . active" but that maintained offices in Germany and Dubai at the time of the events at issue in this case. (First Amended Complaint ("FAC"), Doc. 24 ¶¶ 1–2.) Defendant Peter Zinman is the CEO of defendant Gas Turbine Controls Corporation (GTCC), a New York corporation. (*Id.* ¶ 3.)

According to the First Amended Complaint, sometime before the imposition of the relevant American sanctions on Iran, an Iranian entity purchased a GE Speedtronic Control System, which is a piece of computer equipment for use in a natural gas purification plant. (*Id.* at 2.) The system includes identifying part and serial numbers such that any order of replacement parts is traceable back to the specific system sold to Iran. (*Id.* ¶ 8.)

In early 2010, Talebi attempted to purchase parts for the system from several potential suppliers. (*Id.* ¶ 7.) He first approached General Electric subsidiaries in France and elsewhere, but those companies refused to sell him the parts on the ground that by 2010, U.S. sanctions prohibited such sales without a license from the Office of Foreign Assets Control (OFAC), a branch of the Treasury Department. (*Id.* ¶ 8.) Talebi then became aware of defendants through their website and contacted Zinman by telephone and email in March 2010. (*Id.* ¶¶ 9–10, 34.) After Talebi gave Zinman the relevant part and serial numbers, Zinman confirmed that GTCC could provide the desired parts. (*Id.* ¶¶ 11–12.) On or about April 26, 2010, the parties agreed that GTCC would sell Satco three parts for the system – a termination core, CPU, and analog board – for $390,000. (*Id.* ¶¶ 12–13.)

Defendants did not initially inquire as to the parts' ultimate destination and plaintiffs did not disclose that the parts were going to be shipped to the end user in Iran. (*Id.* ¶¶ 14–15.) Talebi first asked defendants to ship the parts to Satco's Dubai office. (*Id.* ¶ 16.) When defendants stated they could not ship the parts to Dubai, Talebi instead asked them to ship the parts to Satco's office in Germany. (*Id.* ¶¶ 1, 17.) Zinman agreed and instructed Talebi to wire the $390,000 to GTCC's bank account in New York. (*Id.* ¶ 18.) Talebi wired the full amount in three installments between May 5 and August 17, 2010. (*Id.* ¶¶ 19–22.)

GTCC never sent the parts. After defendants confirmed that Iran was the intended destination, they refused plaintiffs' requests (over the next year and half) that they send the parts, refund the $390,000 wired by Talebi, or (on July 5, 2011) that they deposit the funds in a trust account until the resolution of the dispute. (*Id.* ¶¶ 23, 28.) Plaintiffs allege that despite the imposition of sanctions on trade with Iran, defendants could have sought a license from OFAC permitting the sale, but that they did not attempt to do so. (*Id.* at 3.)

### B. 2012 Westchester Action and Talebi's Federal Conviction

Plaintiffs initially sought relief in New York state court. In May 2012, Satco filed a complaint against GTCC in New York Supreme Court, Westchester County, for breach of contract, imposition of constructive trust, and fraud under New York law. *See Satco, Inc. v.*

*Gas Turbine Controls Corp.*, No. 58041/2012 (N.Y. Sup. Ct. Westchester Cnty. 2012). Satco filed a voluntary discontinuance of that action on January 9, 2013. Plaintiffs now allege that they discontinued the case because their attorneys lacked an OFAC license as required to continue the litigation. (FAC at 5.)

Meanwhile, in the summer of 2012, Talebi traveled to the United States on a visitor's visa intending to discuss the disputed transaction with defendants. (*Id.* ¶ 29.) Upon arrival, however, he was "immediately" arrested and charged by the U.S. Attorney for the Southern District of New York with conspiracy to violate the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–1707, and related regulations, in violation of 18 U.S.C. § 371. Talebi now maintains that GTCC and Zinman helped "orchestrat[e]" his arrest, although he provides no specific allegations to support this conclusion. (FAC at 4; *see also id.* ¶¶ 29, 66.) Defendants do not appear to have been prosecuted for their role in the transaction. (*Id.* at 4 & ¶ 31.)

Talebi pleaded guilty and was sentenced to a year and a day's imprisonment. *See United States v. Talebi*, No. 12 Cr. 295 (S.D.N.Y. 2013). He was deported to Iran upon his release from imprisonment on June 14, 2013, and now resides in Tehran. (FAC ¶¶ 2, 30.)

### C. Procedural History

Plaintiffs allege that they had difficulty finding an attorney willing to represent them in the United States following Talebi's conviction. After they contacted their present counsel, it allegedly took several months to receive guidance from OFAC approving their representation, and to arrange the necessary retainer fee. (FAC at 4–5.)

Satco and Talebi filed the original complaint in this action on December 16, 2016, asserting four counts pursuant to New York law: "breach of express and/or implied contract/agreement," "breach of oral contract/agreement," promissory estoppel, and unjust enrichment. (Compl. ¶¶ 28–55.) Plaintiffs sought damages of at least $550,000, including interest on their unreturned funds, as well as fees and costs. (*Id.* at 10.)

In February 2017, defendants moved to dismiss the complaint as time-barred. (First Notice of Mot., Doc. 20.) Judge Jesse M. Furman, who was presiding over the action at that time, directed plaintiffs either to amend the complaint or to oppose the motion to dismiss, adding that "[p]laintiffs will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (Order, Doc. 23.) Plaintiffs responded by filing an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). This First Amended Complaint expanded plaintiffs' narrative of the underlying events and added a fifth count alleging common law fraud and deceit. (FAC ¶¶ 61–67.) Defendants then renewed their motion to dismiss the complaint, substantially repeating the arguments they had made on their first motion. (Second Notice of Mot., Doc. 28.) The case was then reassigned to this Court.

## II. Discussion

### A. Legal Standard

Defendants have moved to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). On such a motion, the Court must accept the truth of the facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011); *O'Grady v. BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 499 n.1 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). To survive the motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). And "[w]hen a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

### B. The Complaint Was Filed Outside the Applicable Statute of Limitations.

All parties agree that New York law governs this case. (*See* Defs.' Mem., Doc. 30 at 3; Pls.' Opp'n Mem., Doc 32 at 3.) New York law generally imposes a six-year statute of limitations on contractual claims, N.Y. C.P.L.R. § 213(2), but adopts the Uniform Commercial Code's four-year statute of limitations on claims for breach of contracts for the sale of goods, N.Y. U.C.C. § 2-725(1).

As limned above, plaintiffs also bring claims other than breach of contract, including unjust enrichment and fraud. (FAC ¶¶ 55–67.) But New York courts look to the "essence of the action" to determine the applicable statute of limitations, *QK Healthcare, Inc. v. InSource, Inc.*, 108 A.D.3d 56, 65 (2d Dep't 2013) (internal quotation omitted), and hence apply the UCC's four-year limitations period to all claims in complaints, such as this one, based primarily on an alleged breach of contract for the sale of goods, *see Wuhu Imp. & Exp. Corp. v. Capstone Capital, LLC*, 39 A.D.3d 314, 315 (1st Dep't 2007). At oral argument of this motion, plaintiffs conceded that the UCC's four-year statute is the applicable limitations period in this case.

The First Amended Complaint expressly alleges that "[d]efendants materially breached the agreement . . . on or about July 5, 2011." (FAC ¶ 41; *see also id.* ¶ 48.) Plaintiffs filed the present action in December 2016 – more than five years and five months after defendants' purported breach. Hence, it is clear on the face of the complaint that plaintiffs filed this action after the expiration of the governing statute of limitations.

5

C. **Plaintiffs Are Not Plausibly Entitled to Equitable Estoppel.**

Nevertheless, plaintiffs contend that the doctrine of equitable estoppel should bar defendants from raising the statute of limitations as a defense to their facially untimely claims. (Pls.' Opp'n Mem. at 12–18.) Read charitably, plaintiffs urge that Talebi's arrest, incarceration, and deportation were the cause of plaintiffs' legal difficulties and delay in filing suit – and that defendants were somehow to blame for these problems. (*Id.* at 5–6.)

Under New York law, "equitable estoppel will preclude a defendant from using the statute of limitations as a defense 'where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.'" *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006) (ellipsis in original) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006)). "It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Zumpano*, 6 N.Y.3d at 674. "The uncommon remedy of equitable estoppel 'is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient,'" and "a plaintiff may not rely on the same act that forms the basis for the claim." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007) (quoting *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675–76 (2d Dep't 1994)).

Here, plaintiffs have not met their burden to plausibly allege facts supporting the application of equitable estoppel to save their facially untimely claims. *See Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015). Indeed, Satco's initiation of the Westchester state court action demonstrates plaintiffs' awareness of their cause of action as early as May 2012. And even if Talebi's subsequent arrest and conviction somehow prevented or delayed the later filing of this federal action, the First Amended Complaint contains only naked speculation that *defendants* were somehow "instrumental in" or "responsible for orchestrating" these obstacles. (FAC at 4 & ¶ 66.)

### D. The First Amended Complaint Is Dismissed with Prejudice.

This amended pleading was filed in direct response to defendants' motion to dismiss the original complaint on the same grounds of untimeliness – and after an explicit warning from Judge Furman that "[p]laintiffs will not be given any further opportunity to amend the complaint to address issues raised by the motion." (Order, Doc. 23.) Although leave to amend should generally be given "freely . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also, e.g., Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[I]n the absence of any indication that [plaintiff] could – or would – provide additional allegations that might lead to a different result, the District Court did not err in dismissing her claim with prejudice.").

## III. Conclusion

For the foregoing reasons, defendants' motion is granted and plaintiff's First Amended Complaint is dismissed with prejudice for untimeliness.

Dated: New York, New York
February 26, 2018

*/s/ Sidney H. Stein*
Sidney H. Stein, U.S.D.J.